**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LUCRESIA FONTENBERRY PARKS                    CIVIL ACTION

VERSUS                                                          NO:     14-2410

CAROLYN V. COLVIN                                  SECTION: "F"
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

<u>REPORT AND RECOMMENDATION</u>

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Plaintiff, Lucresia Fontenberry Parks, ("Parks"), request for Disability Insurance Benefits ("DIB") under Protectively filed under Title II of the Social Security Act, 42 U.S.C. § 423 and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]   The matter was referred to the undersigned pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.     Background**

Parks is a forty-eight-year-old,[2]  215-pound, 5' 4" female,[3]  with some college education,[4] who has past relevant work as a sales specialist.[5] Parks filed for a period of disability and DIB under Title II on April 3, 2012, and protectively filed for SSI under Title XVI of the Social

---

[1]  Rec. Doc. No. 1, p.1.

[2]  Rec. Doc. No. 8-3, Tr. 59.

[3]  *Id.* at Tr. 139.

[4]  *Id.* at Tr. 140.

[5]  *Id.* at Tr. 29.

Security Act ("SSA"), on May 15, 2012.[6]  All claims were initially denied on March 15, 2012.[7]

She alleges that she became disabled on November 28, 2011, due to heart problems, hip problems, and arthritis.[8]  She has not been involved in any substantial gainful activity after November 28, 2011, due to her condition.[9]  Moreover, her earnings records show that she has acquired sufficient quarters of coverage to remain insured through December 31, 2016.[10]

Parks filed a written request for hearing on August 23, 2012.[11]  Benito A. Lobo, the Administrative Law Judge ("ALJ"), held a hearing on March 26, 2013.[12]  The ALJ denied Parks's claims on April 9, 2013, finding that she was not disabled under the meaning of the SSA.[13]

In the decision, the ALJ analyzed Parks's claims pursuant to the five-step[14] evaluation process used to determine whether a claimant is "disabled." Using this process, the ALJ found

---

[6]  Rec. No. 8-5, Tr. 129-130.

[7]  *Id.*

[8]  Rec. Doc. No.8-6, Tr. 145.

[9]  *Id.*

[10]  *Id.* At 141.

[11]  Rec. Doc. 8-2, Tr. 6.

[12]  *Id.*

[13]  *Id.* at 23.

[14]  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000); citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999). First, the claimant must not be presently working at any substantial gainful activity. Id. Second, the claimant must have an impairment or combination of impairments that are severe. Id. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id., citing Crowley, 197 F.3d 194, 197-98. Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Id. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id. See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

that Parks met the insured status requirements of the SSA through December 31, 2016, that she did not engage in substantial gainful activity since November 28, 2011, her alleged onset date.[15] The ALJ further found that she has the following severe impairments: status post left hip arthroscopic surgery with continued pain, obesity, and hypertension.[16]

The ALJ found that Parks does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[17]  The ALJ found that despite Parks's impairments the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.[18] The ALJ found that Parks has the residual functional capacity ("RFC") to perform sedentary work, except that she cannot squat, climb or crouch, and that she can occasionally stoop and kneel.[19]  In reaching this conclusion, the ALJ found that Parks's allegations are not credible to the extent alleged.[20]  The Appeals Council denied Parks's request for review on August 22, 2014.[21]

Thereafter, Parks filed the instant action in federal court, on October 21, 2014, seeking

---

[15]  Rec. Doc. No. 8-2, Tr. 12.

[16]  *Id.*

[17]  Rec. Doc. No. 8-2, Tr. 13.

[18]  *Id.*

[19]  *Id*. 13.

[20]  Rec. Doc. 8-2, Tr. 14

[21]  *Id.* at 1.

review of the ALJ's decision.[22]  Parks alleges three errors:

1.) Whether the ALJ should be required to consider additional evidence from Dr. Chimento regarding a leg lifting limitation;
2.) Whether substantial evidence supports the ALJ's RFC Assessment; and
3.) Whether the ALJ's conclusion that Parks' chronic pelvic pain caused by her ovarian mass and status post adnexal surgery were not severe impairments is based upon substantial evidence.

## II.    **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence.   *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).   The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner.   *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).   If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.   *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d

---

[22] Rec. Doc. No. 12, p. 1.

1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013); citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176; (citing 20 C.F.R. § 404.1527(d)(2)). However, " '[t]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 175 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence'." *Legett,* 67 F.3d at 566; citing *Greenspan,* 38 F.3d at 237.

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20

5

CFR 404.1527 (2); *See Newton v. Apel*, 209 F.3rd 448 (5th Cir. 2000). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at \*3 (E.D. La. Feb. 14, 2000) (*citing Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

The concept of disability is defined in the SSA as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

## III.   Analysis

### A.   Whether the ALJ should be required to consider additional evidence from Dr. Chimento regarding a leg lifting limitation

Parks contends that the Appeals Council committed error that requires remand when it failed to remand the claim for evaluation of new and material evidence of Parks's RFC. Particularly, Parks contends that her surgeon, Dr. Suri, referred her to an orthopedist, Dr. Chimento, for evaluation of her left hip for a total hip replacement and that he concluded that her

arthritis was aggravated by activities at her job. Parks contends that Dr. Chimento provided her a certificate to return to work, subject to keeping her left leg elevated due to the orthopedic injury. Dr. Chimento's assessment occurred eight days after the ALJ issued her opinion such that this new information was not available at the time the opinion was written. Parks contends that the matter should be remanded for consideration of this additional evidence.

In opposition, the Commissioner contends that the additional evidence submitted to the Appeals Council did not support Parks's request for review.   The Commissioner points out that the Council properly declined to remand her claim based on additional evidence because the ALJ addressed the limitation at the hearing of the ALJ.   The Commissioner further contends that the ALJ addressed the subject matter with the vocational expert and that additional information was not material.

A review of the record shows that the leg lifting requirement was considered by the ALJ during the hearing.   Particularly, the ALJ questioned the vocational expert whether the jobs that the he located would be available to a person who elevated his or her feet under the desk.[23]   The vocational expert concluded that if there was a stool underneath the desk that Parks could elevate her leg and that it would not be a problem. *Id*.   As a result, Dr. Chimento's finding that she would have to keep her left leg elevated is consistent with the restriction or limitation posed to the vocational expert and is therefore not material. *Hammond v. Barnhart*, 124 Fed.Appx. 847 (5th Cir. 2005)(new evidence is material where there is a probability that if presented to the Commissioner it would have changed the outcome).   The Court, therefore, finds that remand was not required for consideration of the additional evidence of her leg lifting limitation and the

---

[23]  Rec. Doc. 8-2, Tr. 45.

Council's decision declining to remand is based upon substantial evidence.

**B.      Whether substantial evidence supports the ALJ's RFC Assessment**

Parks contends that the ALJ did not apply the correct legal standard when assessing her RFC.   Parks contends that while Dr. Chimento's evaluation set forth in June 2012 was considered, the specific limitation of April 2013 was not considered because it was issued after the ALJ's opinion.

The Commissioner contends that, as noted above, the leg lifting limitation was considered by the ALJ.   The Commissioner contends that the ALJ included the limitation in her questioning to the vocational expert who concluded that she would be able to work.    As a result, the Commissioner contends that the ALJ's assessment of Parks's RFC is based upon substantial evidence.[24]

The Court again notes that the vocational expert expressly was questioned about whether Parks could lift her leg and work with it elevated. *Id.*   The vocational expert testified that she could and would be able to work.[25]   The Court notes that Dr. Chimento recommended that Parks could work with her left leg elevated.   Even with the June 2012 medical record being generated after the issuance of the ALJ's decision, the same evidence was appropriately considered and the same question of whether she could work with her leg elevated was addressed during the administrative hearing. The Court therefore finds that the ALJ's RFC finding is based upon substantial evidence.

---

[24]  Rec. Doc. No. 11-7, Tr. 199-240.

[25]  *Id.*

C.     **Whether the ALJ's conclusion that Parks' chronic pelvic pain caused by her ovarian mass and status post adnexal surgery were not severe impairments is based upon substantial evidence**

Parks contends that the ALJ failed to apply the appropriate legal standard in reaching her conclusion that the claimant's pelvic pain is "not severe" at Step 2.    Parks contends that the ALJ failed to apply *Stone v. Heckler,* 752 F. 2d 1099, 1101 (5th Cir. 1985) to her impairment chronic pelvic pain status post-surgery but applied it only to the hip deformity and considered it as her source of pain. Parks also contends that the ALJ should have found that the ovarian cysts, which resulted from the chronic pelvic pain, was a severe impairment because it had more than minimal effect on her ability to work.

The Commissioner contends that the ALJ applied the correct standard in evaluating the severity of Parks's alleged impairment.    The Commissioner contends that the ALJ found that Parks's status post left hip arthroscopic surgery with continued pain, obesity, and hypertension severe within the meaning of the act.    The Commissioner further contends that the ALJ properly declined to find additional severe impairments because the record did not support work-related limitations attributable to other impairments.

The record shows that the ALJ conducted an exhaustive analysis of the medical records noting that Parks complained of groin (pelvic) and hip pain.[26]    For example, she noted a prior examination of June 2011 by Dr. Christine Keating that revealed that she complained of pelvic and hip pain but continued working through November 2011.    The ALJ also noted that in September 2012, Parks was seen by Dr. George Chimento and complained of left hip and groin

---

[26] Rec. Doc. 8-2; Tr. 16

pain that radiated to her knee.   The ALJ noted that Parks described the pain as burning and Dr. Chimento diagnosed her with hip arthritis.[27]  The ALJ noted that the medical evidence supported severe musculoskeletal and cardiovascular impairments that cause some functional restriction. The ALJ noted that Parks had persistent complaints of pain and evidence of intermittent gait disturbance due to her hip pain.[28]  The ALJ found that Parks's severe impairments were status post left hip arthroscopic surgery with continued pain, obesity, and hypertension.[29]

The record further shows that in November 2011, Parks was diagnosed with a cystic left pelvic mass and underwent surgery for the removal of a mass in February 2012.   In May 2013, over one year later, the doctor noted that her pain had not decreased despite the removal of the cysts. The doctor was not sure that further surgery would benefit her because she had difficulty with the original surgery.[30]

In reviewing the record, the Court notes that the ALJ did in fact mention that Parks was treated for her ovarian cysts with adnexal surgery and that she did not feel that it had helped. The ALJ also noted that Parks received a steroid injection into the trochanteric bursa for her bursitis.   Therefore, the ALJ properly considered the presence and impact of the bursitis and ovarian issues and there is no evidence in the record suggesting the degree of work related limitations attributable to these impairments. Further, the ALJ considered Parks's degree of persistent pain but based on all the evidence found that she was not disabled. Therefore, the

---

[27] Rec. Doc. 8-2, Tr. 16

[28] Rec. Doc. 8-2, Tr. 17

[29] Rec. Doc. 8-2, Tr.12

[30] Rec.Doc. 8-7, Tr. 323

Court finds that the ALJ's step two determination is based upon substantial evidence.

## IV.   <u>Recommendation</u>

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Lucresia Parks's Disability Insurance Benefits and Supplemental Social Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[31]

New Orleans, Louisiana, this 27th day of January 2016

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[31] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.